UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARLEYSVILLE WORCESTER
INSURANCE COMPANY,
        Plaintiff,

v.                                    Case No: 6:17-cv-258-Orl-28GJK

CB CONTRACTORS, LLC,
CAMBRIDGE BUILDERS &
CONTRACTORS, LLC, and THREE
FOUNTAINS OF VIERA CONDOMINIUM
ASSOCIATION INC.,
        Defendants.

## ORDER

In this declaratory judgment action,[1] Harleysville Worcester Insurance Company (Harleysville) seeks a determination of its obligations under liability and umbrella insurance policies that it[2] issued to Cambridge Builders and Contractors, LLC (Cambridge). Specifically, Harleysville seeks a declaration that it has no duty under those policies to defend or indemnify CB Contractors, LLC (CB) on claims asserted in underlying state court

---

[1] Harleysville invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332. In the Complaint, Harleysville adequately asserted that Defendant Three Fountains of Viera Condominium Association Inc. is a citizen of Florida, (see Doc. 1 ¶ 4), but did not sufficiently plead the citizenship of itself or the LLC Defendants. After being ordered by the Court to do so, (Doc. 91), Harleysville established that it is a citizen of Ohio and Pennsylvania, (see Docs. 93 & 93-1), and filed an Amended Complaint (Doc. 111) repleading the citizenship of the parties. Moreover, the record evidence establishes that the LLC Defendants are citizens of Georgia because their sole member, Michael Ruskin, is a Georgia citizen. Thus, the Court is satisfied that the parties are completely diverse.

[2] Harleysville is litigating this case as the successor in interest to Harleysville-Atlantic Insurance Company—the company that issued the policies. "Harleysville-Atlantic Insurance Company was merged into Harleysville Worcester Insurance Company and ceased to exist as a separate entity on December 31, 2011." (See Mark Hartman Decl., Doc. 93-1 at 3). As used in this Order, "Harleysville" refers to the actions or arguments of either entity, as the case may be.

litigation against Cambridge, CB, and others. Harleysville now seeks summary judgment, (Mot., Doc. 70), but as set forth below, the Court, in its discretion, declines to entertain this declaratory judgment action. Thus, Harleysville's summary judgment motion, along with all other pending motions, is denied as moot, and this case shall be dismissed.

I. **Background**

Defendants Cambridge and CB are limited liability companies that, at times relevant to this case, engaged in general contracting. Cambridge was formed in 1997; CB, in 2003. (See Cambridge Dep., Doc. 79-4 at 30, 73; CB Dep., Doc. 79-3 at 15; Ex. 95 to CB Dep., Doc. 79-3 at 121 & 123; Cambridge Records Dep., Doc. 79-5 at 136). Michael Ruskin is the sole owner and sole member of both entities. (See, e.g., CB Dep., Doc. 79-3 at 23, 70, & 87; CB Records Dep., Doc. 79-4 at 224, 230–31; Cambridge Dep., Doc. 79-4 at 35, 73; Cambridge Records Dep., Doc. 79-5 at 136).

On January 12, 2004, Cambridge submitted a bid proposal to non-party Highlands Viera I, LLC, regarding construction of a multi-building residential complex called The Highlands of Viera West in Viera, Florida (the Viera project). (Doc. 79-3 at 124–38). Ultimately, a construction contract was executed on May 19, 2004. (Construction Contract, Doc. 75-1). The contract lists both CB and "Cambridge Builders, LLC" (rather than Cambridge's correct name—Cambridge Builders and Contractors, LLC) on the first page as the Contractor for the Viera project.[3] (Id. at 2). Ruskin signed the contract in three places: as "Contractor," as managing member of CB, and as managing member of

---

[3] Ruskin testified in his deposition that there is no entity known as "Cambridge Builders, LLC" and he does not know why the first page of the construction contract refers to "Cambridge Builders, LLC." (Ruskin Dep., Doc. 70-5, at 11).

2

Cambridge (correctly identified as "Cambridge Builders and Contractors, LLC" on the signature page). (Id. at 15).

The Viera project was constructed in 2004 and 2005. Now known as the Three Fountains of Viera Condominiums, it is currently under the control of Defendant Three Fountains of Viera Condominium Association Inc. (Three Fountains).

Harleysville issued Commercial General Liability (CGL) Policy No. MP1 5E1671—with Cambridge as the named insured—for seven successive annual policy periods commencing on October 7, 2002, and ending on October 7, 2009. (See CGL Policies, Docs. 1-10 through 1-12, 1-14 through 1-16, & 19-1). Harleysville also issued Umbrella Policy No. BE 5E1671—also with Cambridge as the named insured—effective October 7, 2005, to October 7, 2006. (See Umbrella Policy, Doc. 1-17).

After discovering alleged defects in the design and construction of the Viera project, Three Fountains sent a Notice of Claim to CB on May 15, 2012. (Doc. 1-3). CB forwarded the Notice of Claim to Harleysville, and Harleysville responded with a Disclaimer of Coverage on June 22, 2012. (Doc. 1-4). In that disclaimer, Harleysville stated, among other things, that Harleysville had been unable to identify any policy for CB rather than for Cambridge. (Id. at 13). Harleysville accordingly "decline[d] to accept th[e] claim for defense or indemnity at [that] time." (Id. at 14).

In May 2013, Three Fountains filed suit in Florida circuit court[4] against CB and the architects on the Viera project. (See Underlying Complaint, Doc. 1-2 at 4–21). Harleysville sent another Disclaimer of Coverage on September 17, 2013, stating that it had "completed its analysis of [the Cambridge CGL policy] and for various reasons finds no coverage for

---

[4] Case No. 05-2013-CA-025678 in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida.

the defense or indemnity for CB Contractors, LLC[] under the Cambridge Builders and Contract[ors], LLC, insurance policy with Harleysville." (Doc. 1-5 at 2). Harleysville again "decline[d] to accept th[e] lawsuit for defense or indemnity." (Id. at 13).

After Three Fountains amended its state-court complaint in December 2013 to add claims against Cambridge and others, Harleysville sent a letter to Cambridge on January 30, 2014, advising that "[a]s before, we find no coverage for the defense or indemnity for CB Contractors, LLC . . . under the Cambridge insurance policy with Harleysville however we do find there is a duty to defend Cambridge under a Reservation of Rights." (Doc. 1-7 at 2). But in August 2014, Harleysville and CB entered into an agreement that provides in part: "Because CB is financially unable to continue to defend itself and will either have to default in the lawsuit or seek a settlement with the plaintiff, either of which may prejudice the defense of Cambridge, Harleysville agrees to defend CB in this action under a reservation of rights, in addition to continuing to defend Cambridge under a reservation of rights." (Doc. 1-8 at 2). The agreement further stated that Harleysville "believes there is no duty to defend and/or indemnify CB" but "because Cambridge is alleged to be an alter ego of CB, Harleysville is agreeing to provide a gratuitous defense to CB at this time in exchange for full cooperation from CB in the investigation and defense of this claim." (Id. at 3). It is undisputed that in the state court litigation, which is ongoing, Harleysville has provided a defense to both Cambridge and CB "subject to a reservation of rights that includes the right to contest whether CB is entitled to coverage" under the CGL policies and the umbrella policy. (See Joint Pretrial Statement, Doc. 101, at 6).

Harleysville filed this declaratory judgment action in February 2017. (Compl., Doc. 1). Neither CB nor Cambridge answered the Complaint, and the Clerk entered defaults

4

against them.[5] (See Docs. 33 & 34). Three Fountains, on the other hand, has defended Harleysville's request for a declaratory judgment.

Now before the Court is Harleysville's motion for summary judgment. Harleysville contends that there is no genuine issue of material fact as to whether CB is an insured under the CGL and umbrella policies that it issued to Cambridge. Harleysville thus asks this Court to declare that it has no duty to defend or indemnify CB in the state court litigation. Three Fountains responds that this Court should abstain from entering a declaratory judgment, that issues of fact preclude entry of summary judgment, and that Harleysville is estopped from contesting coverage. Because the Court agrees that it should abstain here, the other issues need not be reached.

## II. Discussion

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). In the Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). The Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Id. at 287 (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)); accord Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).

---

[5] In his deposition, Ruskin testified that neither CB nor Cambridge has the financial means to retain counsel for this case. (Ruskin Dep., Doc. 70-5, at 99).

5

Three Fountains contends that this Court should, in its discretion, decline to enter a declaration of rights in this case. The Court agrees.

In <u>Ameritas</u>, the Eleventh Circuit provided "factors for consideration to aid district courts in balancing state and federal interests" when determining whether, in their discretion, to entertain a declaratory judgment action. 411 F.3d at 1331. The factors listed in <u>Ameritas</u> are:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

<u>Id.</u> This list of factors is not "absolute[,] nor is any one factor controlling; these are merely guideposts." <u>Id.</u>

Ameritas involved a situation where there was "parallel litigation in the state courts," but the Eleventh Circuit has noted that it "ha[s] never held that the Ameritas factors apply only when reviewing parallel actions." First Mercury Ins. Co. v. Excellent Computing Distribs., Inc., 648 F. App'x 861, 866 (11th Cir. 2016). "Rather, the district court must weigh all relevant factors in th[e] case, even [where] the state and federal actions [a]re not parallel." Id. And as the Supreme Court noted in Wilton, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288.

The Ameritas "guideposts" and "considerations of practicality and wise judicial administration" favor abstention under the circumstances of this case. Here, the state court litigation and this case are not truly "parallel" because the parties and issues are largely distinct. But there is a common issue in both cases—whether Cambridge and CB are "alter egos." Harleysville seeks in this Court a declaration that it has no duty to defend or indemnify CB for the claims asserted in the state court litigation. And to the extent that there are disputed issues of fact regarding whether CB could be found to be an insured as an "alter ego" of Cambridge, Harleysville asks this court to "assume without deciding" that CB is an alter ego and rule that regardless of whether CB is an alter ego of Cambridge, Harleysville has no duty to defend or indemnify CB.

Turning to the Ameritas factors, first, the issues presented here are, as correctly noted by the parties, governed by Georgia law. (See Joint Pretrial Statement, Doc. 101, at 6). Thus, while Georgia might have an interest in resolving the insurance law issues raised, the Florida court where the underlying litigation is ongoing does not; insurance coverage is not an issue there. Second, a declaratory judgment by this Court would not

7

"settle the controversy," and third, it might not "serve a useful purpose in clarifying the legal relations at issue." The issue of the liability of Cambridge and CB has not yet been resolved in the state court action, and Harleysville has agreed to defend CB and has been doing so for nearly five years. Additionally, although there is no indication that this declaratory action is being used for "procedural fencing" or that issuance of a declaratory judgment by this Court would increase friction between state and federal courts or "encroach on state jurisdiction," these fourth and fifth Ameritas factors do not aid the analysis here because of the differences between the two lawsuits. And sixth, while there may not be "an alternative remedy that is better or more effective," Harleysville may never need a remedy at all. Seventh, factual issues regarding whether CB and Cambridge are "alter egos" are being vigorously litigated in the state court; although Harleysville asks this Court to "assume" that they are alter egos and rule in its favor in view of that assumption, (see Doc. 85 at 2–3), "practicality and wise judicial administration" caution against the Court venturing down such a path. Eighth, "the state trial court is in a better position to evaluate those factual issues," and both parties here agree that it would be inappropriate for this Court to resolve the factual issues necessary for a complete, non-hypothetical declaration of Harleysville's obligations. Finally, the ninth factor also favors abstention because neither federal common nor federal statutory law dictates a resolution here.

Again, importantly, CB has not yet been found liable in the state court litigation, and the Court declines to rule on the coverage issue (based on assumptions about how the state court might resolve underlying factual issues) while the state litigation is ongoing. And because Harleysville has agreed to defend CB in exchange for CB's cooperation in the state court litigation, there is no need for this Court to rule on Harleysville's obligation to defend. On balance, "considerations of practicality and wise judicial administration"

8

persuade this Court to exercise its discretion not to issue a declaration on the questions of Harleysville's duty to defend and duty to indemnify CB.

**III.    Conclusion**

Having considered the pertinent factors and the circumstances of this case, the Court, in its discretion, declines to entertain this declaratory judgment action. Accordingly, it is **ORDERED**:

1. All pending motions are **DENIED as moot**.
2. This case is **DISMISSED** without prejudice.
3. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida, on March 5, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record